# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LAURIE BEMBENEK,
      Plaintiff,

v.                                                    Case No. 04-C-0002

E. MICHAEL MCCANN, ROBERT D. DONOHOO,
MONTY C. LUTZ, DIANE M. HANSON,
MICHAEL J. CAMP, ELFRED SCHULTZ,
CARL RUSCITTI, WALTER FRANKLIN,
RONALD KRUSICK, MICHAEL DURFEE, and
UNKNOWN AGENTS
      Defendants.

## DECISION AND ORDER

Plaintiff Laurie Bembenek brings this action under 42 U.S.C. §§ 1983 and 1985 against Milwaukee County District Attorney E. Michael McCann; McCann's chief deputy, Robert Donohoo; former Milwaukee police officers Elfred Schultz, Carl Ruscitti, Walter Franklin, Ronald Krusick, and Michael Durfee; and several employees of the Milwaukee office of the State Crime Laboratory, including director Michael Camp; firearms identification examiner Monty Lutz; and micro-serology analyst Diane Hanson. Plaintiff alleges that defendants violated her constitutional rights in connection with a state homicide case in which she was the defendant. Plaintiff filed an original complaint naming only Donohoo, Lutz and Hanson as defendants. They moved to dismiss or alternatively to stay the action pending resolution of a state court proceeding, and I denied the motion. Plaintiff subsequently filed an amended complaint, which is before me now. Defendants Durfee, Franklin, Krusick, Ruscitti, and Schultz (hereinafter "city defendants") and

defendants Camp, Donohoo, Hanson, Lutz, and McCann (hereinafter "state defendants"), bring separate motions both seeking dismissal of the amended complaint, a stay or permission to pursue an interlocutory appeal. In addition, plaintiff moves for a writ of error coram nobis.

## I. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

### A. Background Facts

In the early 1980s, McCann charged plaintiff, a former Milwaukee police officer, with the first-degree murder of Christine Schultz. Plaintiff was then married to defendant Elfred Schultz, who was a Milwaukee police officer and the ex-husband of the victim. In March 1982, a jury found plaintiff guilty of the charge, and the judge sentenced her to life in prison. In 1990, plaintiff escaped from prison and fled to Canada where she was apprehended. Plaintiff claimed refugee status in Canada, which Wisconsin officials opposed, and Canada extradited plaintiff to Wisconsin. Pursuant to Wis. Stat. § 968.26, a Milwaukee County judge then initiated a John Doe proceeding for the purpose of determining whether any officials had committed criminal misconduct in the course of investigating and prosecuting plaintiff. The judge concluded that irregularities had occurred but that they resulted from officials' mistakes rather than crimes.

After the John Doe, plaintiff brought a petition for a new trial in state court under Wis. Stat. § 974.06 (Wisconsin's habeas corpus statute). At that point, prosecutors offered plaintiff a plea deal – if she would plead no-contest to second-degree homicide, they would recommend a sentence that would permit her to be immediately released. Plaintiff accepted the offer, the court vacated her original conviction and convicted her of second-

2

degree homicide, and the State released her. In 2002, plaintiff filed a motion for DNA testing under Wisconsin's new DNA statute, Wis. Stat. § 974.07. In the course of proceedings on the motion, the state reexamined the murder weapon and tested foreign biological material found in swabs taken at the victim's autopsy. Plaintiff argued that these tests exonerated her, but the judge disagreed and declined to vacate her conviction. Plaintiff appealed to the Wisconsin Court of Appeals, and that appeal is pending.

**B.     Plaintiff's Allegations**

Plaintiff's complaint is long and sometimes hard to follow. She alleges something along the following lines: In the early 1980s, she reported to investigators that fellow police officers had participated in a "lewd activity" in a public park.[1] Subsequently, Christine Schultz was murdered, and the police suspected both plaintiff and Elfred Schultz.[2] To punish her for reporting police misconduct, the police sought to implicate her in the murder. Ruscitti, then a captain, supervised Schultz, Krusick, Durfee, and Franklin, then detectives, in hiding and tampering with evidence for the purpose of inculpating plaintiff. Lutz withheld the finding of a ballistics match between the murder bullet and Schultz's gun and falsely reported a match between the murder bullet and a gun to which plaintiff had access. Hanson withheld evidence that the victim had been sexually assaulted and that blood had been found on her person and at the murder scene, falsely reported finding plaintiff's hair on the victim, and allowed the police to tamper with evidence. McCann and Donohoo covered up exculpatory evidence and prosecuted plaintiff in bad faith.

---

[1] The nature of this activity is not clear from the complaint.

[2] Notwithstanding being a suspect, Schultz apparently participated as an investigator in the murder investigation.

3

When plaintiff sought refugee status, McCann and Donohoo made misrepresentations to Canadian authorities to prevent her from obtaining such status. They also withheld evidence from John Doe investigators and misled a John Doe witness in order to maintain plaintiff's conviction. And when plaintiff sought a new trial, they misrepresented the evidence that they possessed to induce her to accept their plea offer. Finally, they made misrepresentations and withheld evidence in contesting plaintiff's DNA motion. During the DNA proceeding, plaintiff discovered that a number of defendants had committed misconduct in her case. She discovered that Hanson and Lutz had mishandled and withheld evidence and that Camp had written a note falsely stating that the murder weapon, which had been missing since 1992, had been lost in a flood. Camp also made misrepresentations during the DNA proceeding.

## II. MOTION TO DISMISS

### A. Legal Standard

Defendants characterize their motion as a Fed. R. Civ. P. 12(b)(6) motion. However, because defendants filed an answer, their motion is one for judgment on the pleadings under Rule 12(c). See Warzon v. Drew, 60 F.3d 1234, 1237 (7th Cir. 1995). Like a Rule 12(b)(6) motion, I may grant a Rule 12(c) motion only if the plaintiff can prove no set of facts that would entitle her to relief. N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 453 (7th Cir. 1998) (citing Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997)). The essence of the motion is not that the plaintiff has pleaded insufficient facts; it is that, even assuming all of her facts are accurate, she has no legal claim. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184

4

F.3d 623, 627 (7th Cir. 1999). In considering the motion, I assume that the facts that plaintiff alleges are true, and construe those facts and all reasonable inferences flowing from them in the light most favorable to the plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990). In resolving a motion challenging the sufficiency of a complaint, I may take judicial notice of matters in the public record. Palay v. United States, 349 F.3d 418, 425 n.5 (7th Cir. 2003).

**B.    Discussion**

All defendants argue that plaintiff's claims are barred by the so-called "favorable termination" rule of Heck v. Humphrey, 512 U.S. 477 (1994). Such rule bars a § 1983 suit that would impugn a state conviction or sentence if the conviction or sentence has not been invalidated.[3] The Supreme Court characterized Heck as lying at the "intersection of the two most fertile sources of federal-court prisoner litigation – the Civil Rights Act of 1871 . . . and the federal habeas corpus statute," id. at 480, and held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Id. at 486-87 (footnote omitted). The petitioner in Heck had access to habeas corpus at the time that he sought damages under § 1983, thus the applicability of the favorable termination rule to a claimant who lacked such access was not at issue. The Court nevertheless opined that the rule would apply in such circumstances. Id. at 490 n.10.

---

[3]Both sides assume that plaintiff could not prevail on her § 1983 claim without impugning her state court conviction.

5

Justice Souter, concurring in the judgment and joined by three Justices (Blackmun, Stevens and O'Connor), argued that favorable termination should be required only of persons who are not barred from bringing petitions for habeas corpus (hereinafter the "Souter principle"). Id. at 501-03 (Souter, J., concurring). He opined that habeas and § 1983 collide only when both are available and that the Court should not needlessly deprive a person who has a valid claim of a federal right of action. Id. A post-Heck Supreme case indicated that a majority of the Court endorsed Souter's concurrence. See Spencer v. Kemna, 523 U.S. 1, 19, 21-22 (7th Cir. 1998) (Souter, J., concurring, and Ginsburg, J., concurring).

The Supreme Court has not yet resolved whether there are exceptions to the Heck rule. See Muhammad v. Close, 540 U.S. 749, 752 n.2 (2004) (stating that it is not yet settled whether the "unavailability of habeas . . . may . . . dispense with the Heck requirement"). However, the Seventh Circuit has determined that Heck does not establish a categorical bar to all § 1983 claimants whose actions would impugn valid state convictions. See DeWalt v. Carter, 224 F.3d 607, 617 (7th Cir. 2000) (stating that "where habeas is not applicable, the requirements of the habeas statute do not supersede the explicit right to proceed under § 1983"); see also Hoard v. Reddy, 175 F.3d 531, 533 (7th Cir. 1999) (indicating that there is an exception to Heck's favorable termination rule where "there is no way to get the conviction undone"); Sylvester v. Hanks, 140 F.3d 713, 714 (7th Cir. 1999) (stating that the Supreme Court "would treat Heck as inapplicable when collateral review is impossible").

Minimally, a claimant who was never in custody for habeas purposes, as where only a fine was imposed as punishment, and thus never had an opportunity to challenge the

6

constitutionality of her conviction in federal court, should not be barred from doing so under § 1983. See Emery G. Lee III, Note, Federal Rights, Federal Forum: Section 1983 Challenges to State Convictions in Federal Court, 51 Case W. Res. L. Rev. 353, 353-54 (2000). Further, a claimant who could not have discovered the facts necessary to support a habeas petition until after her sentence was served, should not be barred from challenging her conviction under § 1983. See Heck, 512 U.S. at 502 (Souter, J., concurring) (noting that where a minority is convicted of raping a white woman by a Ku Klux Klan-controlled state court, but does not discover facts proving that the evidence against him was manufactured until after his release, it would be unjustifiable to deny him a federal forum for relief under a statute popularly known as the "Ku Klux Act").

In their motion to dismiss, original defendants argued that there was no exception to Heck. In addressing their motion, I concluded that there likely was an exception and that plaintiff possibly came within it. However, in their motion to dismiss plaintiff's amended complaint, both city and state defendants shift the focus of the argument and contend that even if there is an exception to Heck, at least at the present time plaintiff can prove no set of facts bringing her within it. I conclude that this argument has merit.

Plaintiff cannot presently come within the exception to the favorable termination rule because she may yet be able to overturn her conviction in state court. In Nance v. Vieregge, 147 F.3d 589, 591 (7th Cir. 1998), the Seventh Circuit assumed that the favorable termination rule was likely inapplicable when a § 1983 plaintiff lacked any other means of obtaining relief from a conviction but held that Heck barred the plaintiff's § 1983 action because other avenues of relief remained available to him. The plaintiff could have sought a writ of error coram nobis in state court or petitioned the governor for a pardon.

7

Id. The court dismissed the plaintiff's complaint without prejudice so that he could pursue those options. Id. at 592. Since then, the Seventh Circuit has endorsed Nance's analysis on several occasions. See Carr v. O'Leary, 167 F.3d 1124, 1129 (7th Cir. 1999); Hoard, 175 F.3d at 533 (noting that a probable exception to Heck applies where there is "no route other than a damages action under section 1983"). This analysis respects Heck's concern for finality and consistency, see Heck, 512 U.S. at 484-85, but reserves an exception where no other means of challenging an allegedly unconstitutional conviction are available.

In the present case, at least three avenues for obtaining relief from her conviction remain available to plaintiff.[4] First, plaintiff is presently appealing the Milwaukee County Circuit Court's denial of her DNA motion and has asked the state court of appeals to set aside her conviction. Second, although she cannot obtain coram nobis relief in this court (see below), she may yet seek such relief in state court. Under Wisconsin law, courts have discretion to grant writs of error coram nobis to correct errors of fact not known at the time of trial even if the petitioner may no longer use habeas corpus. Jessen v. State, 95 Wis. 2d 207, 213-14 (1980). Finally, plaintiff may seek a pardon from the governor. See Wis. Stat. § 304.08-.11. Thus, as the Seventh Circuit did in Nance, 147 F.3d at 592, I will dismiss the present action without prejudice to enable plaintiff to utilize the remaining available avenues for overturning her conviction.

I note, however, that plaintiff faces an additional obstacle to obtaining relief under § 1983 if she fails to have her conviction overturned – her no-contest plea. While she likely

---

[4]Neither Heck nor Nance establishes a § 1983 exhaustion requirement; rather they provide that a § 1983 plaintiff must have her state conviction vacated in order to establish a cognizable § 1983 claim. See Heck, 512 U.S. at 483 ("The issue with respect to monetary damages is not . . . exhaustion"); Nance, 147 F.3d at 591.

8

did not waive her right to bring a § 1983 claim, as neither her plea questionnaire nor her plea colloquy addressed the issue of civil suits, her decision to plead no-contest may well bar her from arguing that she had no access to habeas corpus. Habeas corpus is the appropriate vehicle for challenging a state court conviction in federal court. See Prieser v. Rodriguez, 411 U.S. 475, 490 (1973) (finding that a state prisoner may not use § 1983 to seek release from custody, as a way around the habeas exhaustion requirements). Allowing a plaintiff to accept a plea deal, attain her freedom and then challenge her conviction using § 1983 may undermine this principle. However, because the parties have not addressed this question in their briefs, I decline to rest my decision on this ground.

Finally, because I am dismissing plaintiff's action for the reasons stated above, I will not address defendants' other arguments.

### III. CORAM NOBIS

Plaintiff asks me to issue a writ of error coram nobis, which allows courts "to correct errors of fact unknown to the court at a time of judgment, without fault of the defendant, which, if known, would probably have prevented the judgment." United States v. Morgan, 346 U.S. 502, 516 (1954). However, the Seventh Circuit has concluded that federal courts may not issue writs of coram nobis to overturn state criminal judgments. Lowery v. McCaughtry, 954 F.2d 422, 423 (7th Cir. 1992) (stating that "[c]oram nobis arose as a device to extend the period (originally limited to the term of court) in which the judge who rendered a decision could reexamine his handiwork"). Thus, I lack jurisdiction to grant plaintiff's application.

## IV. CONCLUSION

Therefore,

**IT IS ORDERED** that plaintiff's claims against all defendants are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's motion for a writ of error coram nobis is **DENIED**.

Dated in Milwaukee, Wisconsin, this 31 of August, 2006.

/s_____
LYNN ADELMAN
District Judge